(No. 35131.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH MATTHEWS, Plaintiff in Error.

*Opinion filed November 18, 1959.*

James L. Rood, of Chicago, for plaintiff in error.

Grenville Beardsley, Attorney General, of Spring-field, and Benjamin S. Adamowski, State's Attorney, of Chicago, (Fred G. Leach, and William H. South, Assistant Attorneys General, and Francis X. Riley, and John T. Gallagher, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Hershey delivered the opinion of the court:

Joseph Matthews, hereinafter called the defendant, was convicted on January 14, 1953, pursuant to a bench trial in the criminal court of Cook County, of the crime of taking indecent and immoral liberties with a six-year-old girl. He was sentenced to the penitentiary for a term of from 19 to 20 years. Subsequently he was enabled to obtain a transcript of the record, pursuant to Rule 65—1 of this court, and thereafter filed his writ of error as a poor person, for review of his conviction.

The record reveals that on the night of August 24, 1952, Joseph Felau was in his home at 1327 North Damen Avenue in Chicago, when he heard some muffled sounds. He went outside and heard someone telling a child to shut up or get slapped, and he heard flesh striking flesh. Felau called to the man to put the child down and ran to the alley nearby, where he saw defendant coming from where the noises had been. Felau chased the defendant, who ran, and finally caught him. Upon returning to the scene with a policeman, Felau saw the little girl, Esther Adams, lying limp in the arms of an officer.

At the trial the victim, who was then seven years old, testified that on the night of the occurrence the defendant was at her home. When she took the garbage out the defendant told her to come with him to get her mother's coat. He could not find his key so he took her into the alley, took her clothes down and molested her. The child, when asked to point out the person who attacked her, selected a police officer in the courtroom.

Henry Glazek, a police officer, testified that he was called to an alley at 1307 North Damen Avenue on the night of August 24, 1952. He saw a little girl, lying naked, in the alley—her overalls were pulled down around her ankles and she was bruised on her face and lips. She was semiconscious and unable to speak, but he later learned she was Esther Adams.

Officer Milford Grabowski, a police officer assigned to the 29th district, testified that shortly after nine P.M. on August 24, 1952, a squad car brought in the defendant, Felau, and the mother of the child. Defendant professed to know nothing. The next day he saw the defendant as he was questioned by assistant State's Attorney Egan of the sex bureau, in the presence of Felau. He stated that defendant admitted he took the child into the alley and between the buildings, but had only put his hand over her

mouth when she began to scream. Felau related essentially the same admission by defendant.

Defendant claimed that he had met the victim's mother in a bar, had relations with her several times, and that on August 24, 1952, he was in and out of her home several times with "Swede," who professed to be her husband. The defendant and "Swede" were drinking most of the day, and in the evening defendant accused "Swede" of taking his money. They then left the apartment, with Swede helping defendant to get home. Defendant claimed that he became sick and Swede left him in the alley. Defendant then recalled that he later woke up in the alley to find the little girl taking money from his pockets, he grabbed her and she screamed, whereupon he put his hand over her mouth. He then heard a man yell at him and he ran, that he tussled with this man and then ran on. The man caught him and they waited for the police, without defendant attempting to leave. He denied striking the child, removing her clothing, or molesting her in any way.

Defendant was convicted and sentenced to the penitentiary. He now brings this writ of error alleging that (1) the trial court erred in not excluding certain evidence prejudicial to him, (2) the trial court erred in refusing to admit certain evidence offered by defendant, (3) the evidence is not sufficient to support his conviction, and (4) the verdict and sentence were the result of passion and prejudice on the part of the court. He also complains that the competent evidence is not sufficient to sustain his conviction.

The defendant first urges that the evidence given by the victim should have been excluded as incompetent because her testimony fails to reveal that she knew what it meant to tell the truth or the nature of an oath, because it appears that she had been coached just prior to the trial by the State's Attorney, because she pointed out a police

officer as the man who harmed her, she hesitated and was confused in testifying, and because she was to be rewarded for testifying.

We have repeatedly recognized that the charge here made against defendant is easily made, hard to be proved, and harder to be defended by the party accused, though ever so innocent. When the conviction of a defendant rests or is based upon the testimony of a child of tender years, in order to sustain the conviction, that evidence must be corroborated or otherwise clear and convincing. *People* v. *Parker*, 15 Ill.2d 508.

The test of the competency of a person as a witness is one of intelligence and understanding, and if such test is met a child may properly take an oath to tell the truth and may testify. Moreover, the defendant has the duty to raise an objection to the competency of a child as a witness at the time of the trial, and the question cannot be raised for the first time on appeal. (*People* v. *Mueller*, 2 Ill.2d 311.) The record fails to reveal any move to exclude the testimony of this child during the trial. We cannot now consider a question as to her competency.

The testimony of the child must be considered with relation to her age. Her confusion and hesitation is understandable, as is her mistaken identification of the officer as her attacker. Nothing indicates that she saw the defendant on any occasion other than the day of the assault. A review of her testimony is most persuasive that she was not "coached." Her answers reveal that the State's Attorney only told her to tell about the man that got her and asked her questions as to the occurrence, to which she supplied all of the answers.

The mother of the child testified that she promised the child a paint set if she would tell the truth. There is no evidence that the mother told the child what to say, but only that she asked her to tell what happened and to tell the truth. Certainly we cannot condemn the urgings of a

parent to a child to tell the truth, or to explain the meaning of telling the truth. We can understand likewise the reluctance of a child to testify in a courtroom full of strangers. The promise of a reward to one so young, to persuade her to forget her fears and to testify is not in error, there being no evidence that the child was told what to say. Moreover, the reward was made known to the court for its consideration in evaluating the child's testimony. Her testimony is corroborated and convincing and is thus acceptable in spite of the promise of reward.

The testimony of the child, as to the occurrence in question, is so fully substantiated and corroborated by the testimony of Felau, officers Grabowski and Glazek, and by the defendant himself, that it is rendered clear and convincing, and its truthfulness is made manifest. In addition to the child's testimony, the conviction can be supported by the testimony presented by the other witnesses. Felau heard the disturbance next to the building in which he lived, heard the threat to the child and a blow struck, observed defendant run from between the buildings and from the alley, scuffled with defendant and finally chased and caught him. He then saw the naked semiconscious child, and later heard defendant admit taking the child between the buildings. One officer found the nude, semi-conscious child between the buildings, and another officer heard defendant admit taking the child between the buildings and putting his hand over her mouth when she screamed. Defendant, at the trial, admitted that he and the child were between the buildings. All of this fully corroborates the child, is convincing, and with the testimony of interne Robert A. Kokotek, who examined the child and found her bruised about the head and back, with dirt on her back and in the genital creases, is alone sufficient to sustain the conviction.

The defendant contends that the trial court erroneously refused to admit evidence proffered by him for the purpose of impeaching Violet Jones, the mother of the child. He

sought to show that contrary to her testimony on cross-examination, she had been in a tavern known as Cock of the North on many occasions. The trial court held that such evidence would constitute impeachment on an immaterial fact and refused to admit the evidence.

The court did not err in refusing to permit the defendant to present his rebuttal evidence as impeachment upon this immaterial issue.

Finally defendant urges that the judgment of conviction should be reversed because the rulings and remarks of the trial judge reveal that the verdict and the sentence were the result of passion and prejudice. He insists that the rulings of the judge in regard to the proffered impeaching evidence, and the statements of the judge at the time of sentencing reveal his prejudicial attitude and his predetermination of the case. Upon sentencing defendant the trial judge remarked that it was regrettable that the statute limited the sentence to 20 years, and that in this type of case a man should be put away for life. He then sentenced the defendant to a minimum of 19 years and a maximum of 20 years.

Defendant points to nothing during the course of the trial which indicates passion or prejudice on the part of the court. The remarks to which defendant now takes exception were made only after the court had found the defendant guilty. The remarks do not mean that the court had entertained a preconceived attitude in regard to defendant's guilt, but only that the facts of the crime, as they came to light from the evidence presented, shocked and revolted the court.

We can well understand the strong feelings of the court, but nothing appears to us to indicate that the court tried the case in any attitude other than one of impartiality and fairness. The actions of the court during the trial, and its pronouncements of judgment and sentence were proper, correct, and within the limits of the law. That the

court expressed, after trial, a personal opinion clearly attributable to the evidence in the record, does not mean that the court was not an impartial trier of facts. *People* v. *Brown*, 392 Ill. 519; *People* v. *Tensley*, 3 Ill.2d 615.

The judgment of conviction is clearly supported by the record. Failing to find any prejudicial error, we affirm the judgment of the criminal court of Cook County.

*Judgment affirmed.*