THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES PADFIELD, a/k/a JAMES WAGNER, Defendant-Appellant.
(No. 72-207;

Second District—February 11, 1974.

Ralph Ruebner, Deputy Defender, of Elgin, for appellant.

F. Lawrence Lenz, State's Attorney, of Freeport (James W. Jerz and Charles D. Sheehy, of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant was convicted in a jury trial of the offense of indecent liberties committed upon a fifteen-year-old boy. Upon application for

probation the court placed the defendant on probation with the condition that he serve seven months at the Illinois State Penal Farm at Vandalia and seek psychiatric assistance during his period of probation. The defendant appeals.

Defendant contends that (1) he was not proven guilty beyond a reasonable doubt, and that (2) the court erred in permitting the State to reopen the State's case after both the State and the defense had made their final argument.

The defendant is a cab driver employed by the Freeport Cab Company. He is a paraplegic and the cab he drives is equipped with hand controls for operation by the defendant and is not used in taxi service except by the defendant. The complaining witness is a fifteen-year-old boy and a sophomore in high school. On the morning of May 4, 1971, the boy went to the nurse's office in the high school complaining of a migraine headache. The nurse called his mother. He was excused from school and a cab was called. After picking up the boy, the driver drove the cab on to a side road where he performed an act of deviate sexual conduct upon the fifteen-year-old boy. The victim did not make a complaint about the incident until approximately one week before August 30, 1971, when he advised his mother, his aunt, his uncle, and his minister. This latter fact was elicited from complaining witness by defendant's counsel. The defendant did not testify but his wife and business associate testified as to the alibi of the defendant; namely, that he was with them during the morning in question.

The defendant contends that the testimony of the victim was not clear and convincing in that portions of the victim's testimony had been contradicted. The discrepancies relied upon by the defendant were that the complaining witness testified that the cab was a red cab, when in fact it was a yellow cab; that the complaining witness testified at trial that the appearance of the defendant was the same as on the date of the crime, when in fact defendant had shaven off his beard and did not have dyed blonde hair as he had on the date of the incident in question; and that in his original complaint to the police, also introduced by the defendant, the victim stated that the offense occurred on a "school day in April, 1971," when in fact the proof disclosed the offense allegedly occurred on May 4.

These discrepancies in the complaining witness' testimony, however, are minor and insignificant in view of the fact that he correctly stated both in his testimony at trial and in his prior statement to the police, that the defendant had a crippled condition and used hand controls for the operation of the taxi cab, the defendant's most distinguishing features. Furthermore, the school nurse substantiated the correct date in

question by testifying that a cab was called for the boy on May 4, 1971.

Other variances in the statement given by the victim to the police and the testimony at the trial do not appear to this court to be of sufficient importance to warrant consideration.

The defendant also contends that, inasmuch as the victim failed to make a complaint until some time in August, approximately four months after the incident, this fact makes the boy's story doubtful. The fact that the victim herein did not make a complaint until about four months after the incident is understandable. This is the type of offense which is embarrassing to the victim. It is also to be noted that the complaining witness testified "If I ever told anyone he'd get me. He didn't know how but he would." The State has cited *Honselman v. People* (1897), 168 Ill. 172, 48 N.E. 304. In *Honselman* the defendant was indicted for the then "infamous crime against nature" involving a sixteen-year-old boy who did not make a complaint until a year and a half after the offense. The appellate court in observing the shame and disgrace upon the victim refused to set aside the guilty verdict of the jury.

■■ The courts of Illinois have repeatedly stated that the credibility of witnesses is for the jury. We do not deem it necessary to cite authority, as Illinois Digest, Vol. 10A, Sec. 742(1), cites some three hundred cases to this effect. It is only the duty of the reviewing court to reverse the judgment of the jury as to the guilt of the accused when we are of the opinion that the evidence does not prove the defendant guilty beyond a reasonable doubt. Because it is true that the charge of indecent liberties, as in a case of rape, is an accusation easily made, hard to prove, and even harder to refute, the Illinois Supreme Court in *People v. Nunes* (1964), 30 Ill.2d 143, 146, 195 N.E.2d 706, 707, stated:

> "* * * In such cases reviewing courts are especially charged with the duty of carefully examining the evidence, and while due weight must be given to the judgment of the jury as to the credibility of the witnesses, it is our duty to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and create an abiding conviction that he is guilty of the crime charged."

Under these principles the court has required the complaining witness' testimony when uncorroborated, to be clear and convincing. *People v. Williams* (1953), 414 Ill. 414, 111 N.E.2d 343.

■■ Applying the standard required in *Nunes* we are of the opinion that the evidence herein does in fact show that the defendant is guilty beyond a reasonable doubt in that the testimony of the complaining witness is clear and convincing. The complaining witness clearly identified the defendant in both his statement to the police and his testimony

at trial. The discrepancies in his statement and testimony were minor and inconsequential. The complaining witness had no reason to falsely accuse the defendant as he did not know the defendant prior to the incident, and only saw him once driving by his house after the crime. The delay in reporting of the incident can be easily understood in the light of the offense, and the threats made against him, and in this case, does not make the complaining witness' story any less convincing. In a case factually similar to the one now before us (*People v. Meyers* (1972), 7 Ill.App.3d 82, 287 N.E.2d 11), this court held that the description of the defendant was positive and that the defendant was proven guilty beyond a reasonable doubt. Defendant has cited an opinion of this court (*People v. Thornton* (1971), 132 Ill.App.2d 126, 268 N.E.2d 887) involving a charge of indecent liberties in which we reviewed a number of similar cases. That case is not controlling here. In *Thornton* the record disclosed that the testimony of the prosecutrix was doubtful and that bad feeling existed between the mother of the child and the defendant grandfather.

We turn next to the contention of the defendant relative to the trial court allowing the State to reopen its case after final arguments. As a part of the defendant's alibi defense a witness testified he drove the defendant to the First National Bank of Freeport on May 4, the day of the offense, where the defendant made a payment on his loan there. In rebuttal, the State produced the loan officer of the bank who testified that the bank journal showed the payment was made on May 14, 1971. Upon cross examination the witness stated that where the bank journal indicated it was paid May 14, that it would have been paid on that date. Defense counsel then introduced the defendant's loan payment book which allegedly showed the payment made on May 4.

After final arguments, counsel for the State then represented to the court that they had discovered the loan payment book kept by the bank showing defendant's payment on May 14. He requested permission to reopen the case to introduce this document in contradistinction to defendant's loan payment book which allegedly showed the payment on May 4.

Defendant has cited *People v. Castree* (1924), 311 Ill. 392, 143 N.E. 112. In *Castree* the State, after final arguments, introduced a witness who gave damaging testimony in chief. No excuse or explanation was given for the failure of the State to call this witness during the trial and the Illinois Supreme Court held that under those circumstances the discretion of the trial court was, in fact, abused. *Castree* is not applicable to the facts before us.

In *People v. Bell* (1928), 328 Ill. 446, 159 N.E. 807, the Illinois Supreme Court held the testimony that might have been introduced as

evidence in chief, may however, be admitted in rebuttal after final arguments at the discretion of the trial court. We held in *People v. Price* (1972), 8 Ill.App.3d 158, 160, 289 N.E.2d 280, 282:

> "It is within the trial court's discretion to permit a case to be reopened in order to receive additional evidence. Such decision will not be upset unless there has been an abuse of that discretion. [Citations.] Defendant contends that this rule applies only in cases wherein the prosecutor has inadvertently omitted certain mere formalities of proof. (See, *People v. Cross, supra.*) Contrary to this contention, the prosecution has been allowed to reopen its case not only for the purpose of proving formalities but also to establish the very facts essential for a conviction."

It is interesting to note that in the case before us the trial court observed after examining the law, "The court must also observe in this case after examining defendant's Exhibit #5, being the bank book, that on the page where the stamp is marked on the payment, it is my observation there is some evidence of erasure. For these reasons I will permit the State to reopen their case and present this evidence and I'll give the defendant additional opportunity to argue after this evidence is in so that he may comment on this in his closing arguments to the jury." After objecting to the testimony the defense counsel stipulated to the admission of the loan payment record book of the bank for payment 29 stamped by teller #2 on May 14, 1971. The defense counsel then did, in fact, comment on this to the jury stating "that this was a question of fact, really, which date is accurate, but even if you believe the payment was made on May 14 it does not disprove the defendant's defense."

In view of the above, we do not believe that the trial court abused its discretion in allowing the State to reopen its case for the limited purpose of rebutting testimony adduced by the defendant. In its case in chief, the State had produced the owner of the cab company, who testified that his record disclosed that on May 4, 1971, the defendant worked as a cab driver and on that date earned $44.75. He further testified that in order to earn that amount the defendant would probably have to work nine to ten hours although he could earn it in eight hours. Defendant's alibi witness testified that he was with the defendant from 9:15 in the morning until 5:30 at night and that the defendant went home at that time. It can thus be seen that the alibi as to the time in question on May 4, 1971, does not reconcile with the payroll record of the cab company showing payment for eight to ten hours of work on May 4.

Judgment of the trial court is affirmed.

Affirmed.

T. MORAN and SEIDENFELD, JJ., concur.