THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD L. MORGAN, Defendant-Appellant.

Fifth District   No. 75-122

Opinion filed December 28, 1976.

JONES, J., dissenting.

Stephen P. Hurley and Michael J. Rosborough, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Michael K. Grabowski, State's Attorney, of Pinckneyville, for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant, Donald Morgan, was charged by indictment filed in the circuit court of Perry County with the offense of indecent liberties with a child. Following a bench trial, the trial court found defendant guilty as charged and sentenced him to four to eight years imprisonment. Defendant appeals the judgment entered by the trial court.

Defendant first contends that he was not proved guilty beyond a reasonable doubt.

The prosecutrix was seven years old on Thursday, March 14, 1974, the date of the alleged incident. At trial, she testified that during the evening on that date, defendant was at her home, drinking beer and talking with her mother and stepfather. At around 8:30, she dressed in a nightgown and went to bed. According to the prosecutrix, sometime thereafter, defendant came into her room and woke her up. He told her to get out of bed and she complied. He then asked her if she wanted to go out for a ride but she refused. She stated that defendant ordered her to walk into the living room and lie down on the floor; he then pulled down her underpants and kissed her in the vaginal area. On cross-examination, the prosecutrix stated that the first person she had told of the alleged incident was her grandmother, who was told of it two days after the alleged offense, on Saturday, March 16, 1974. She stated that she could not remember telling her schoolteacher. It was also brought out on cross-examination that at a preliminary hearing she had stated that she had not been wearing underpants on the night of the alleged incident.

The mother of the prosecutrix testified that on March 14, 1974, after supper, defendant visited her and her husband. They drank beer for an

hour until defendant fell asleep on a couch. After putting her daughter to bed, unsuccessful attempts were made to awaken defendant. He was eventually left sleeping on the couch when the mother and her husband themselves went to sleep. The next morning, when the witness got up, she noted that defendant was gone. She awoke her daughter and sent her to school. The prosecutrix did not tell her of the incident. The stepfather of the prosecutrix gave essentially the same testimony as had his wife.

The prosecutrix visited her grandmother on the weekend of March 16-17, 1974. The grandmother testified at trial that while giving the prosecutrix a bath on Saturday evening (March 16, 2 days after the alleged offense), she noticed that the child's vaginal area was red and irritated. The grandmother was not permitted to testify to what the child stated caused the redness. On Monday, March 18, 1974, the prosecutrix was brought to a medical doctor for an examination; however, the doctor did not testify at trial, although he had testified at the preliminary hearing.

For the defense, Police Officer Michael Bragg testified that on March 23, 1974, he was called to the mother and stepfather's trailer home where he was told that on March 21, the prosecutrix had been molested by defendant. The stepfather then went to the police station where he signed a complaint alleging that the incident at issue took place on March 21 rather than on March 14.

The second grade teacher of the prosecutrix testified that sometime during March, 1974, the prosecutrix told her of the incident at issue. The witness stated that she was told by the child that an Allan Miller had attempted to have sexual intercourse with the prosecutrix but that the child had screamed for her mother and that the police had then been called. The teacher immediately informed her principal of the child's story but had not contacted the police since; according to the child, they had already been contacted. The witness also testified to other conversations she had had with the prosecutrix. At one time the child had stated that her "real father was ground up like hamburger," and on another occasion she told of her mother being missing and that she was going to find her. On cross-examination, the witness stated that although she did not think that the prosecutrix had lied to her, the stories were "pretty wild."

The defendant then took the stand and denied being in the presence of the prosecutrix on or about March 14, 1974, and specifically denied all the allegations made by the prosecutrix.

In rebuttal the prosecutrix testified denying that she had told her teacher that her father had been ground up like hamburger and she denied ever stating that Allan Miller had tried to do anything with her. She stated that she had rarely told her teacher about things that had

happened at her home although she admitted telling the story of her mother being missing.

The cause was taken under advisement on September 24, 1974. On October 31, 1974, more than five weeks later, the court found the defendant guilty, after stating that:

> "* *. * the testimony of the little girl was quite definite, certain * * *. The Court further feels that there was corroborating evidence presented consisting of the physical appearance of the little girl on the Saturday evening following the Thursday night on which this is said to have happened * * *. The defendant testified in his own behalf, called no witnesses * * *."

■■■ The charge of indecent liberties with a child is an accusation easily made, hard to prove, and even harder to disprove by the party accused. It is therefore well established that where a conviction for taking indecent liberties is based on the testimony of a child, the evidence must be corroborated or otherwise be clear and convincing in order to sustain a judgment of guilt. (*People v. Nunes*, 30 Ill. 2d 143, 195 N.E.2d 706; *People v. McGrath*, 28 Ill. 2d 132, 190 N.E.2d 746.) In addition to the child's testimony, there was evidence that two days after the alleged offense, the grandmother first noticed that the child's vaginal area was red and irritated. The trial court found that the child's physical condition was evidence corroborating her testimony. However, we do not believe that this evidence serves to corroborate the testimony of the prosecutrix. It appears improbable that the alleged acts complained of by the prosecutrix might cause a persisting redness and irritation in the vaginal area. In addition we find no evidence in the record supporting such a conclusion. The physician who examined the prosecutrix after the condition was first noticed did not testify at trial. We note, however, his testimony at a preliminary hearing that the irritation could have resulted from a wide variety of causes involving any sort of friction. He also stated that the child's vaginal area appeared to be practically normal. While there was testimony corroborating the child's testimony that defendant was present in the trailer for some portion of the night in question, we find no evidence corroborating the child's testimony of the alleged act itself.

The State argues that the child's testimony was nonetheless clear and convincing. After a careful review of the record, we do not agree. Despite the propinquity of the living room where the offense allegedly took place and the parents' bedroom, the child failed to cry out for her parents' help. This circumstance was unexplained in the record. Of greater significance, the record shows no reason why the prosecutrix had not informed either her mother or grandmother of the alleged incident until two days after it

occurred. The mother testified that on the morning following the alleged offense, her daughter had made no complaint to her and had not acted unusual. Under the circumstances of this case, this delay in complaining to her family appears entirely unreasonable. Also unexplained is the testimony of Police Officer Bragg that on March 23, 1974, he was called to the trailer home of the prosecutrix and informed that the alleged offense had taken place on March 21 rather than March 14. Moreover, the testimony of the prosecutrix was discredited by the testimony of her second grade school teacher. She testified that the child had given her a different description of the incident and had named a different perpetrator of the crime. The teacher also testified to other stories the child had told her showing a propensity by the child to fabricate. The veracity and the credibility of the prosecutrix was clearly brought into serious question by this disinterested witness whose testimony remained unshaken during cross-examination.

■■ Although the credibility of witnesses and the weight to be given their testimony is primarily a question for the trial court, a reviewing court is charged with a duty on a charge of indecent liberties to reverse the conviction when the evidence taken as a whole does not create an abiding conviction that the defendant is guilty of the crime charged. (*People v. Thornton*, 132 Ill. App. 2d 126, 268 N.E.2d 887; *People v. Falk*, 121 Ill. App. 2d 1, 257 N.E.2d 175.) In the case at bar, the record affirmatively indicates that the trial court did not remember or consider the crucial testimony of the schoolteacher and the testimony of the police officer. Five weeks after hearing the evidence, the court stated as part of its findings that the defendant "called no witnesses." This circumstance in and of itself may have required a new trial. (*People v. Bowie*, 36 Ill. App. 3d 177, 343 N.E.2d 713.) However, since the evidence as a whole does not create an abiding conviction that defendant is guilty of the crime charged, we reverse the judgment of the circuit court of Perry County.

In light of our holding we need not consider the other issues raised by defendant.

Judgment reversed.

CARTER, P. J., concurs.

Mr. JUSTICE JONES, dissenting:

Careful examination of the record in this case convinces me that the trial court was correct in finding defendant guilty and I would affirm the conviction. Since the majority has not seen fit to do likewise, I respectfully dissent.

I believe, with the trial court—who had the benefit of firsthand

observation, that the testimony of the victim was believable, was true, and was corroborated. Defendant made no objection to the competency of the child to testify. Both at the preliminary hearing and the trial, the child was extremely reluctant to relate what the defendant did to her. This reluctance is a direct and natural result of the shame and guilt she felt as a result of the incident. While the child's teacher testified that the child did "say some pretty wild things" the teacher also said that she did not believe that the girl had ever told her a lie. In its finding of guilty the court stated that the testimony of the little girl was "quite definite and certain. Was not shaken on cross-examination." This comports with the requirement of the law in cases of this nature which is that where the testimony of the prosecuting witness in a case of indecent liberties is clear and convincing it is sufficient to sustain a conviction although the testimony is not corroborated. *People v. Richardson*, 17 Ill. 2d 253, 161 N.E.2d 268.

I ascribe no importance whatsoever to the fact that although the incident occurred on Thursday night the child did not tell anyone until Saturday night when she told her grandmother. The majority finds the two-day delay in complaining to her family entirely unreasonable. This finding is not only disagreeable to me, it is entirely at odds with the cases which have considered the matter of delay in reporting indecent liberties. The shame and embarrassment that came upon the victim as a result of the incident with defendant naturally preclude her wanting to discuss it with anyone. In *People v. Padfield*, 16 Ill. App. 3d 1011, 307 N.E.2d 183, there was no complaint for approximately four months. The court stated that "The fact that the victim herein did not make a complaint until about four months after the incident is understandable. This is the type of offense which is embarrassing to the victim." (16 Ill. App. 3d 1011, 1013.) In *People v. Richardson* the complaining witness, a seven-year-old daughter of defendant, made no complaint for one month. The Supreme Court found the lapse of time to be understandable because of the natural reluctance of the child to discuss the vile acts. It is worth noting that in the *Richardson* case the prosecuting witness on an occasion one year earlier had made a false accusation against defendant and her teacher, "story telling" similar to the case in question. In *People v. Matthews*, 17 Ill. 2d 502, 162 N.E.2d 381, conviction of a defendant for indecent liberties with a six-year-old child was sustained even though at trial the child pointed out a police officer as the perpetrator rather than the defendant. In *People v. Halteman*, 10 Ill. 2d 74, 139 N.E.2d 286, five days elapsed between the act and the child's complaint.

The fact that there were discrepancies in the child's testimony at the preliminary hearing and the trial does not destroy her credibility. It is but one of the factors to be considered. Minor discrepancies in testimony

taken at two different times do not destroy the credibility of the witness but only go to the weight of the testimony. *People v. Strother*, 53 Ill. 2d 95, 290 N.E.2d 201; *People v. Lagios*, 39 Ill. 2d 298, 235 N.E.2d 587.

The majority states that "while there was testimony corroborating the child's testimony that defendant was present in the trailer for some portion of the night in question, we find no evidence corroborating the child's testimony of the alleged act." Testimony of eyewitnesses to the alleged act is unnecessary—it is rarely available. Because of the reprehensible nature of the act, it is always committed in a place of privacy. Notwithstanding, I agree with the trial court that the testimony of the victim was corroborated, and soundly so. In *People v. Walker*, 13 Ill. 2d 334, 148 N.E.2d 748, it was held that corroborating evidence, facts and circumstances, when and where required in order to sustain a conviction, need not be as to the actual taking of indecent liberties. (Also see *People v. Kirilenko*, 1 Ill. 2d 90, 115 N.E.2d 297.) That corroboration consisted of the testimony of the girl's mother and stepfather that defendant was in the residence where the child lived on the night in question. The trial court also felt that the physical appearance of the child on the Saturday evening following the Thursday night occurrence was corroboration.

The majority states that it is improbable that the alleged actions complained of by the child might cause a persistent redness and irritation in the vaginal area. The physician who testified at the preliminary hearing stated that the irritation could have resulted from a wide variety of causes involving any sort of friction. The redness and irritation of the vaginal area could be readily explained by the emotional state of the victim following the incident. Her feeling of shame and guilt would cause her to attempt to "rub off" the contact made by defendant. It was such rubbing and scratching that drew her grandmother's attention to the inflamed part in the first instance.

In addition to this corroboration, there is another matter which corroborates the testimony of the child. The defendant had agreed to take a lie detector test. This was administered by an employee of the Illinois Bureau of Investigation at the State Crime Laboratory in DeSoto. Prior to the giving of the test the examiner gave the defendant the *Miranda* warnings and defendant thereafter proceeded to take the test. Following the test the defendant volunteered a statement to the examiner and a deputy sheriff of Perry County who had entered the room. At the trial the People attempted to offer defendant's volunteered statement. The court sustained an objection made upon the ground that this statement was made outside the presence of defendant's attorney. In my opinion the ruling was erroneous and the statement should have been admitted. It in no way concerned the result of the polygraph examination nor any

questions or answers given thereat. Defendant had been given the *Miranda* warnings and understood his rights to keep silent. Nevertheless he volunteered the statement. The offer of proof made by the State indicated that the defendant's statement to the examiner and the deputy sheriff was that he had just kissed the child on the face. In contradiction to this statement, the defendant testified at the trial that he had not even been at the child's home on the evening in question and produced another witness who offered the same testimony. The volunteered statement of defendant is clearly an admission against his interest, made after receiving the *Miranda* warnings, and it should have been admitted into evidence and considered with the other testimony. Moreover, it constituted a square impeachment of defendant's alibi testimony.

I would affirm the judgment of guilty rendered by the trial court.