THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID H. DEAL, Defendant-Appellant.

Fifth District    No. 5—87—0512

Opinion filed June 16, 1989.—Rehearing denied July 18, 1989.

Daniel M. Kirwan and Edwin J. Anderson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John R. Clemons, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, David Deal, appeals from the judgment of the circuit court of Jackson County finding him guilty of two counts of aggravated sexual abuse. (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—16(c)(1).) The court sentenced defendant to four years' probation and fined him $9,600 plus costs. Defendant appeals and raises the following issues: (1) whether he was proved guilty beyond a reasonable doubt; (2) whether the court erred in admitting into evidence detailed corroborating evidence of the child victim's complaint; (3) whether count I should be vacated because it failed to state an offense and because evidence revealed there was only one act; and (4) whether the fine assessed must be reduced or vacated. This court affirms in part, reverses in part, and remands for resentencing.

On June 20, 1985, the State filed an information charging defendant with one count of aggravated criminal sexual abuse. (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—16(c)(1).) Later the State amended the information, which stated:

"[D]uring the first week of April, 1985, to-wit:

### COUNT I
*AGGRAVATED CRIMINAL SEXUAL ABUSE*

In that the said defendant, who was seventeen (17) years of age or older, knowingly committed an act of sexual conduct with [L.E.D.] who was a child under thirteen (13) years of age when the act was committed, in that the defendant intentionally touched and fondled the defendant's sex organ thereby masturbating in the presence of [L.E.D.] for the purpose of sexual gratification or arousal of the defendant, in violation of Illinois Revised Statutes, [1984 Supp.], ch. 38, sec. 12—16(c)(1).

### COUNT II
*AGGRAVATED CRIMINAL SEXUAL ABUSE*

In that the said defendant, who was seventeen (17) years of age or older, knowingly committed an act of sexual conduct with [L.E.D.] who was a child under thirteen (13) years of age when the act was committed, in that the defendant intentionally touched and fondled [L.E.D.'s] sex organ for the purpose of sexual gratification or arousal of the defendant, in violation of Illinois Revised Statutes, [1984 Supp.], ch. 38, par. 12—16(c)(1)."

At the bench trial, the following evidence was adduced.

The victim, a minor, L.E.D., was seven years old at the time of

the incident and was living with his mother, brother and grandfather in Carbondale. The family had just arrived in Carbondale when L.E.D. became acquainted with defendant. L.E.D. and defendant began to go to movies and other places together. L.E.D. also visited defendant's home several times, where they watched television and played games.

A few months later while they were at defendant's house, defendant asked L.E.D. if he wanted to earn some money. L.E.D. responded yes. At that time defendant took out some Playboy magazines and asked him how much he wanted to earn. L.E.D. said $5. At some point they went into the bedroom and defendant then began to masturbate in front of L.E.D. Defendant pulled L.E.D.'s pants down and held L.E.D.'s penis for two seconds while defendant continued to masturbate. Defendant stopped masturbating after he ejaculated. Afterwards, defendant took L.E.D. to Wal Mart so L.E.D. could buy a $5 toy and later took him out to eat.

About a month after the incident, L.E.D. told his mother. He did not tell her earlier because defendant told him that his mother would beat him (L.E.D.). After he told his mother, she called and talked to Sergeant Tim Moss, who interviews children who have been molested. L.E.D. talked with Sergeant Moss and a woman named Judy, but L.E.D. could not remember when he talked to them.

During cross-examination, L.E.D. stated that when he first talked to his mother, he denied that anything happened. He admitted what happened during a second talk with his mother. L.E.D. could not remember in detail what he told his mother. During the initial interview with Sergeant Moss, L.E.D. told him what happened except for defendant touching him. L.E.D. recalled not telling Sergeant Moss during a second taped interview about defendant touching him.

The State's next witness was L.E.D.'s mother. From 1984 through 1985, she and her son and her father lived in Carbondale. While living there, she became acquainted with defendant as L.E.D.'s friend. L.E.D. told her how the two met. The next day L.E.D. asked permission to visit defendant because he had lots of toys. As the friendship progressed, L.E.D. asked her permission to go to the movies or out to eat with defendant. She gave her permission because she thought it was a big brother-type relationship. Initially, L.E.D. was reacting positively but later he began acting very confused about his life.

During the first part of May 1985, she changed her feelings about defendant after a conversation with some Carbondale police officers. She also changed her feelings about defendant when she saw a televi-

sion special about child molesters. She observed that defendant's actions were as those described on the program. She then told L.E.D. about her feelings about defendant. She talked to Sergeant Tim Moss, who later talked to L.E.D.

Around mid-May, she confronted L.E.D. about her concerns regarding defendant. When she first confronted her son, he did not tell her anything. L.E.D. acted very scared, ashamed, as if he had done something wrong. He responded that they were doing things with their clothes off in defendant's house. He told her about the day he brought home a $5 toy which was payment for watching and participating in acts without clothes. L.E.D. brought the toy home the Saturday before Easter Sunday of 1985. L.E.D. told her that he did not tell her earlier because defendant told him that she would beat him. On the following day, she kept L.E.D. home from school because he was so emotionally upset. She did not tell the school about the incident but did notify the police. A couple of officers came by the house and spoke to her about the incident. In June, she gave the police permission to interview her son.

Sergeant Tim Moss, who had been with the City of Carbondale police department for 14 years, was on an investigatory assignment in 1985 when he met L.E.D.'s mother. As a result of their conversation, he spoke with L.E.D. His first conversation with L.E.D. took place in the parking lot of the apartment in which L.E.D. and his family lived. After that conversation, he told L.E.D.'s mother to contact him if L.E.D.'s behavior continued.

On May 13, 1985, L.E.D.'s mother called him. He went to her house and spoke to her. On May 15, he interviewed L.E.D. at the police station and tape-recorded the interview. During cross-examination, Moss stated that L.E.D. did not mention that he exposed his sex organ to defendant. In one of the reports, L.E.D. stated that defendant touched his sex organ. L.E.D. did have problems with dates and could not give an exact date.

Defendant presented his only witness, L.E.D.'s second-grade teacher at the time of the incident. She stated that L.E.D. had an untruthful reputation at school. She would question any testimony of L.E.D.

During cross-examination, she stated that L.E.D. was not her star pupil because he had some behavior problems. She knew that he came from a low-income single-parent home and that his father was in prison. She stated that she had a close relationship with L.E.D. because she spent a great deal of time working with his behavioral problems.

On April 6, 1987, the court found defendant guilty of both counts. On June 22, the court sentenced defendant to four years of probation, fined him $9,600 plus costs and ordered restitution in the amount of $50. Defendant appeals.

I

Defendant's first issue on appeal is whether he was proved guilty beyond a reasonable doubt. Defendant specifically argues that the testimony of L.E.D. taken as a whole does not create an abiding conviction of his guilt because his testimony was neither clear nor substantially corroborated. *People v. Thornton* (1971), 132 Ill. App. 2d 126, 129, 268 N.E.2d 887, 888.

■ In order to sustain a conviction of child molestation, the testimony of the victim must be clear and convincing or supported by other evidence. However, testimony of the victim alone is sufficient. (*In re C.K.M.* (1985), 135 Ill. App. 3d 145, 150, 481 N.E.2d 883, 887.) Testimony is clear and convincing when it is consistent and unwavering (*People v. Krison* (1978), 63 Ill. App. 3d 531, 535, 380 N.E.2d 449, 452) and when it is "unshaken" on cross-examination (*People v. Dorsey* (1965), 57 Ill. App. 2d 389, 395, 206 N.E.2d 762, 765). "It is not necessary that the testimony of the complaining witness be crystal clear and perfect in order to be deemed clear and convincing." (*People v. Server* (1986), 148 Ill. App. 3d 888, 894, 499 N.E.2d 1019, 1024.) "Where the testimony of the victim is not clear and convincing, it must be substantially corroborated by some other factual evidence or circumstances." 148 Ill. App. 3d at 895, 499 N.E.2d at 1024.

■ This court finds that L.E.D.'s testimony was clear and convincing. L.E.D. stated clearly how defendant befriended him, how defendant enticed him into the bedroom, and how defendant masturbated in front of him and then pulled L.E.D.'s pants down and touched his penis. His testimony did not change even under extensive cross-examination. L.E.D. did not express doubt or change his mind. Moreover, no evidence was adduced to show any motivation to lie. *People v. Padfield* (1974), 16 Ill. App. 3d 1011, 1014, 307 N.E.2d 183, 185.

Although L.E.D.'s testimony contained inconsistencies regarding the date and the duration of the acts of abuse, those discrepancies affect the weight of the testimony and do not render it unworthy of belief. (*People v. Krison* (1978), 63 Ill. App. 3d 531, 535, 380 N.E.2d 449, 452.) L.E.D. was confused about when holidays occurred but recalled that the incident occurred around "summer vacation," which started in May. L.E.D.'s confusion about dates and holidays does not

render his testimony incredible, as the time of year in which the incident occurred does not affect the credibility of a child. (*People v. Tannahill* (1987), 152 Ill. App. 3d 882, 886, 504 N.E.2d 1283, 1286.) Furthermore, his mother corroborated the date and the time when L.E.D. brought home the toy purchased as part of the "deal."

Defendant also points out that L.E.D. delayed telling anyone about the incident and initially denied it. This court notes that there is a natural reluctance of children to report such an incident. (*People v. Krison* (1978), 63 Ill. App. 3d 531, 535, 380 N.E.2d 449, 452; *People v. Padfield* (1974), 16 Ill. App. 3d 1011, 1013, 307 N.E.2d 183, 185.) A child will be reluctant because of guilt, shame, fear and embarrassment. (63 Ill. App. 3d at 535, 380 N.E.2d at 452.) In this case, L.E.D. was afraid that his mother would beat him. In light of his age, his fear is also understandably associated with the "guilt and shame associated with such degrading acts" naturally tending to inhibit him from talking about them. (*People v. Robinson* (1981), 94 Ill. App. 3d 304, 308, 418 N.E.2d 899, 902.) Regarding initial denials by L.E.D., the courts of this State have upheld a child molestation conviction even though the victim previously denied the incident. *People v. Tannahill* (1987), 152 Ill. App. 3d 882, 886, 504 N.E.2d 1283, 1286.

Defendant also points out the testimony of L.E.D.'s second-grade teacher. She stated that at school, L.E.D. had a reputation for untruthfulness. Defendant links L.E.D.'s reputation at school with the possibility that he created the incident under pressure from his mother. However, his mother did not become suspicious until after the police approached her and she viewed a television special on child molestation. This court notes that the teacher did not state that he ever lied to her or was prone to fantasy. No other evidence was produced revealing a history of fabrication or, more importantly, preexisting hostility between defendant and L.E.D. This court finds that L.E.D.'s testimony was clear and convincing, and, as such, defendant was found guilty of aggravated criminal sexual abuse beyond a reasonable doubt.

## II

Defendant also raises the issue whether the trial court erred in admitting into evidence testimony which went beyond what is permitted by section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10) and which was a prior consistent statement. Section 115—10 provides in part:

"§115—10. In a prosecution for a sexual act perpetrated upon a child under the age of 13 *** the following evidence shall be

admitted as an exception to the hearsay rule:

(1) testimony by such child that he or she complained of such act to another; and

(2) testimony by the person to whom the child complained that such complaint was made in order to corroborate the child's testimony." Ill. Rev. Stat. 1985, ch. 38, par. 115—10.

■ The State initially responds that defendant has waived the issue because he failed to raise the error in his post-trial motion and because he elicited the information of which he complains. However, this court finds, after reviewing the record, that defendant did make a specific objection in his motion and that at trial defense counsel was merely attempting to expose flaws in the witnesses' stories after the State initially questioned the witnesses extensively on the complaint. Furthermore, where the defense is responding to the State's having elicited damaging evidence over defense objections, further inquiry is not waiver. (*People v. Gillman* (1980), 91 Ill. App. 3d 53, 59, 414 N.E.2d 240, 245.) This court finds the State's argument without merit.

■ Section 115—10 was "drafted so that a person who hears a child's complaint of sexual abuse is allowed to give corroborating testimony of the fact a complaint was made." (*People v. Laremont* (1988), 174 Ill. App. 3d 201, 206, 528 N.E.2d 249, 252.) However, in *People v. Powell* (1985), 138 Ill. App. 3d 150, 159, 485 N.E.2d 560, 566, the court held that such testimony must necessarily include some details to effectively corroborate the fact that a complaint was made. In *People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019, the court stated further that "[t]he admission of unnecessary or impermissible detail, such as the identification of the defendant, will be deemed to be harmless when substantially corroborated by the testimony of the child victim or any other pertinent evidence and the child victim is present in court and available for cross-examination." 148 Ill. App. 3d at 900, 499 N.E.2d at 1027-28.

■ This court finds the trial court properly allowed the testimony. In recalling L.E.D.'s complaint, his mother and Sergeant Moss would necessarily and did in fact repeat some details of the incident. To corroborate L.E.D.'s testimony, it was necessary for L.E.D.'s mother and Sergeant Moss to recite details. Without these details, their testimony would be without merit and the intent of section 115—10 would be frustrated. Even if there was error, it was made harmless because L.E.D. was present and was extensively cross-examined on every detail of the incident.

### III

■ Defendant also raises on appeal that count I should be vacated because it failed to state an offense and the evidence showed there was only one act. The State concedes that count I fails to charge an offense, citing *People v. Gann* (1986), 141 Ill. App. 3d 34, 489 N.E.2d 924. This court agrees, and accordingly, vacates count I and remands for resentencing on count II. In light of this action, we also vacate the $9,600 fine.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed in part, vacated in part, and remanded for resentencing.

Affirmed in part; vacated in part and remanded.

WELCH, P.J., and HARRISON, J., concur.