2021 IL App (1st) 191242-U
No. 1-19-1242
Order filed January 26, 2021

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 15441 |
| | ) | |
| COURTNEY DAVIS, | ) | Honorable Timothy J. Joyce, |
| | ) | Judge presiding. |
| Defendant-Appellant. | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

## ORDER

¶ 1    *Held*:  Defendant's conviction for unlawful use or possession of a firearm by a felon is affirmed over his challenge to the sufficiency of the evidence.

¶ 2    Following a bench trial, defendant Courtney Davis was convicted of unlawful use or possession of a firearm by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2016)) and sentenced to three years' imprisonment. On appeal, defendant argues that the State failed to prove beyond a reasonable doubt that he possessed a firearm. We affirm.

¶ 3    Defendant was charged by indictment with UUWF predicated on possessing a firearm (count I) and ammunition (count II), aggravated unlawful use of a weapon (counts III-X), unlawful possession of a firearm by a street gang member (count XI), and defacing the identification marks of a firearm (count XII).

¶ 4    At trial, Chicago police officer Dean Ewing testified that, around 8:37 a.m. on October 1, 2017, he and a partner, Officer Creamer,[1] were in an unmarked vehicle on Emerald Avenue. Ewing, who was driving, passed another vehicle driving the opposite direction. Ewing observed a driver and a front passenger, whom Ewing identified in court as defendant. It was a clear day, and Ewing had seen defendant "in the area that he hangs out in quite a few times." The driver was not wearing a seatbelt. Ewing could not recall if defendant wore a seat belt.

¶ 5    Ewing turned to follow the other vehicle, which did not increase its speed. The vehicle turned onto 118th Place. Ewing followed when the vehicle was three or four houses down 118th Place. The vehicle was in the middle of the road and Ewing could see its passenger side.

¶ 6    When Ewing was 5 or 10 feet from the vehicle, he saw a firearm drop "straight down" from the passenger window and land in the street. The firearm "just went down" and did not appear to have been "thrown." Ewing stopped his vehicle and Creamer recovered the firearm, a 9-millimeter Ruger handgun loaded with 15 rounds. Ewing confirmed that firearms of that type "have weight to them."

¶ 7    As Creamer recovered the firearm, Ewing watched the other vehicle turn onto Halsted Street. Ewing drove to Halsted and did not see the vehicle, so he "drove a little bit," looked down 118th Street, and saw the vehicle had crashed into a pole. Defendant and the driver were running

---

[1] Officer Creamer's first name is not the transcript.

from the vehicle. Creamer pursued the men on foot while Ewing drove back to Halsted "to try to cut them off." Ewing saw defendant "come out through a yard," about "a football field's length" from where the vehicle crashed. Ewing exited his vehicle and detained defendant. Creamer detained the driver.

¶ 8      At the police station, Ewing advised defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and defendant agreed to speak with him. Defendant told Ewing, "I know I'm getting that gun. It is what it is."

¶ 9      On cross-examination, Ewing stated that he and Creamer encountered the other vehicle, a red 2004 Chevrolet Impala, on Emerald between 118th Place and 119th Street. Ewing denied that he could not see whether defendant wore a seatbelt, stating he just could not recall whether defendant did. Vehicles were parked on both sides of the street, and Ewing performed a three-point turn to follow the Impala. Ewing denied that the Impala "drove off at a relatively high rate of speed" while Ewing turned. After turning around, Ewing "sped up" to get behind the Impala.

¶ 10     Ewing stopped on 118th Place so Creamer could recover the firearm, and lost sight of the Impala when it turned onto Halsted. Ewing drove approximately half a block on Halsted before he saw the Impala crashed into the pole on 118th Street. Ewing did not see the crash. The driver was later identified as Francis Thompson, and the vehicle was registered to him. Ewing believed the firearm was sent to a lab, but he was never informed of any results from forensic testing. Other officers who responded to the scene found a woman in the backseat of the vehicle.

¶ 11     On redirect examination, Ewing testified that the firearm dropped from the front passenger side window, where defendant had been sitting. Thompson was arrested for driving under the

influence. The woman was found unresponsive on the floor of the vehicle's backseat and taken to the hospital in an ambulance.

¶ 12    The State entered a stipulation that defendant had a prior felony conviction for burglary.

¶ 13    Defense counsel moved for a directed finding, arguing that no one saw defendant possess or drop the firearm. The State argued that, because the firearm fell straight down from the front passenger window, it must have been dropped by defendant, who was in the passenger's seat; given that the firearm "had weight," it would have had "momentum" and "fl[own] out the window" had it been thrown by Thompson from the driver's seat. The court denied the motion.

¶ 14    In closing, the State incorporated its argument on the motion for a directed finding and argued that defendant claimed the firearm as his own in his statement to Ewing. Defense counsel argued that defendant's statement to Ewing that he knew he would be accountable for the firearm did not establish defendant's possession or knowledge of the firearm. Additionally, given the time required to perform a three-point turn, counsel questioned whether the officers were within 10 feet of the Impala when the firearm fell. Lastly, defense counsel argued that Thompson or the rear passenger could have disposed of the firearm out the window or passed it to defendant to immediately drop out the window without defendant forming the necessary intent to possess it.

¶ 15    The court stated that it believed Ewing's testimony "without qualification." The court stated that Ewing "obviously had an opportunity to observe the gun come out of the car" because he and Creamer stopped to recover it and "[i]t would strain credulity to presume" that the firearm was already in the street. The court also believed that defendant's statement to Ewing indicated that defendant knew the firearm was in the vehicle. The court found further that, because the

firearm fell "straight to the ground," defendant must have dropped it from the window, and therefore possessed it. The court then stated:

"Had the person in the backseat—this passed out female who was there—some how dropped it out of the passenger side of the car, she probably would not have been passed out cold on the floorboard of the car, not even lying down on the seat of the car, just passed out in some kind of distress from some kind of substance, so I don't have any belief or doubt that, perhaps, she was the person who possessed the gun."

The court further explained that, even if defendant received the firearm from another person and immediately dropped it out the window, he still would have possessed the firearm. The court found defendant guilty on count I for UUWF.[2]

¶ 16     Defendant filed a motion for new trial, which reiterated the defense's arguments at trial and further posited that the court misconstrued the evidence when it stated that the woman was "passed out *** from some kind of substance." The court denied the motion.

¶ 17     Following a hearing, the court sentenced defendant to three years' imprisonment.

¶ 18     On appeal, defendant argues that the State failed to prove beyond a reasonable doubt that he had actual possession of the firearm because no one saw him possess it. Defendant further argues that the State failed to prove that he constructively possessed the firearm because Thompson or the woman could have dropped it from the window, and his statement to Ewing did not establish his knowledge or possession. In response, the State argues that it proved defendant's actual

---

[2] The record does not show the State nol-prossed counts II-XII, but during closing arguments, the State only requested the court find defendant guilty on count I. The trial court did not announce findings on the remaining counts, nor do the half-sheets, electronic docket, or mittimus show that judgment was entered thereon.

possession of the firearm where Ewing's testimony that the firearm fell straight down from defendant's window established that defendant personally disposed of it.

¶ 19    "Where the defendant challenges the sufficiency of the evidence used to convict him, the reviewing court must determine, considering the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements met beyond a reasonable doubt." *People v. Swenson*, 2020 IL 124688, ¶ 35. The reviewing court "will not retry the defendant." (Internal quotation marks omitted.) *Id.* It is for the trier of fact to determine the credibility of the witnesses, decide what weight to give their testimony, resolve conflicts in the evidence, and draw reasonable inferences from the evidence. *Id.* ¶ 36. "Credibility determinations are entitled to great weight," and the testimony of one credible witness may sustain a conviction. *Id.* "[A] reviewing court will set aside a conviction only where the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Id.* ¶ 35. "All reasonable inferences are drawn in favor of a finding of guilt." *Id.*

¶ 20    The same standard applies "whether the evidence is direct or circumstantial." *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). "Because possession is often difficult to prove directly, proving possession frequently rests upon circumstantial evidence." *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). Where a conviction is based on circumstantial evidence, "[t]he trier of fact need not *** be satisfied beyond a reasonable doubt as to each link in the chain of circumstances," so long as "all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt." *People v. Hall*, 194 Ill. 2d 305, 330 (2000). "[T]he trier of fact is not required to disregard inferences that flow normally from the evidence before it, nor need it search

out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70.

¶ 21   To sustain a conviction for UUWF as charged in count I, the State was required to prove that defendant (1) "has a prior felony conviction," and (2) "knowingly possessed a weapon." *People v. Balark*, 2019 IL App (1st) 171626, ¶ 93; see also 720 ILCS 5/24-1.1(a) (West 2016). Defendant does not dispute that he has a prior felony conviction, however he does dispute that he knowingly possessed a weapon. A person acts knowingly with respect to "[t]he nature or attendant circumstances of his *** conduct, described by the statute defining the offense, when he *** is consciously aware that his *** conduct is of that nature." 720 ILCS 5/4-5(a) (West 2016).

¶ 22   "Possession may be actual or constructive." *Balark*, 2019 IL App (1st) 171626, ¶ 94. "Actual possession is the exercise by the defendant of present personal dominion over the illicit material and exists when a person exercises immediate and exclusive dominion or control over the illicit material, but does not require present personal touching of the illicit material." (Internal quotation marks omitted.) *Id.* "[A]ctual possession is proven by testimony that shows that the defendant exercised some form of dominion over the weapon, such as trying to conceal it or throwing it away." *Id.* Constructive possessions exists "where a defendant has the intent and capability to maintain control and dominion over the contraband, and it may be proved with evidence that the defendant had knowledge of the presence of the contraband and had immediate and exclusive control over the area where the contraband was found." *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27.

¶ 23   Defendant argues that the State did not prove he constructively possessed the firearm. However, given that the trial court found, based on Ewing's testimony, that defendant dropped the

firearm from the window, defendant was convicted under an actual possession theory. Compare *Balark*, 2019 IL App (1st) 171626, ¶ 94 (actual possession "exists when a person exercises immediate and exclusive dominion or control over the illicit material" and may be proven by testimony that defendant tried to conceal or throw away contraband) with *Jackson*, 2019 IL App (1st) 161745, ¶ 27 (constructive possession exists when defendant "had knowledge of the presence of the contraband and had immediate and exclusive control over the area where the contraband was found").

¶ 24    Turning to the trial evidence, Ewing saw defendant in the front passenger seat of a red Chevrolet Impala. He had met defendant "quite a few times." The driver was not wearing a seatbelt, so Ewing turned his vehicle to follow the Impala. While Ewing was 5 to 10 feet from the Impala, he saw a firearm drop straight down from the front passenger window. The firearm landed and rested in the middle of the street, where Ewing's partner recovered it. The Impala crashed into a pole, and defendant fled. Following his arrest, defendant stated, "I know I'm getting that gun. It is what it is." The trial court found Ewing credible. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that defendant had actual possession of the firearm.

¶ 25    Defendant argues that the State did not prove that he had actual possession of the firearm because no one saw him possess it. However, Ewing saw defendant in the vehicle's front passenger seat, and then, while the vehicle was in the middle of the road and Ewing was 5 to 10 feet from it, saw the firearm drop straight from that window and rest in the middle of the street. A rational trier of fact could infer from Ewing's testimony that defendant dropped the firearm from the window, and exercised present personal dominion over it. See *Hall*, 194 Ill. 2d at 330 (circumstantial

evidence can sustain conviction, and factfinder need not be satisfied beyond a reasonable doubt as to each link in chain of circumstances so long as all evidence, taken together, establishes guilt beyond reasonable doubt); see also *Balark*, 2019 IL App (1st) 171626, ¶ 94 ("actual possession is proven by testimony that shows that the defendant exercised some form of dominion over the weapon, such as trying to conceal it or throwing it away").

¶ 26    Further, the weapon was dropped from the Impala when the officers' unmarked vehicle was following in close proximity, and defendant fled from the Impala when it crashed. "The fact of flight, when considered in connection with all other evidence in a case, is a circumstance which may be considered *** as tending to prove guilt." (Internal quotation marks omitted.) *People v. Lewis*, 2015 IL App (1st) 122411, ¶ 73. "The inference of guilt which may be drawn from flight depends upon the knowledge of the suspect that the offense has been committed and that he is or may be suspected." *Id.* Given that the firearm fell from defendant's window, a trier of fact could infer that defendant knew an offense had been committed and that police would suspect him of committing it. While Thompson was arrested for driving under the influence, there is no evidence that defendant had any reason besides the firearm to flee from the crashed vehicle.

¶ 27    Lastly, defendant argues that the trial court misconstrued the evidence when it stated that the woman in the backseat was unconscious from "some kind of substance." Defendant argues that no evidence showed the woman was unconscious from a substance, and there is therefore no reason to believe that she was unconscious prior to the crash and incapable of disposing of the firearm. Defendant compares his case to *People v. Morgan*, 44 Ill. App. 3d 730 (1976), where a defendant was convicted of indecent liberties with a child. *Morgan*, 44 Ill. App. 3d at 733. In *Morgan*, the reviewing court reversed because "the trial court did not remember or consider *** crucial

testimony" undercutting the child's version of events and, in announcing its finding of guilt, incorrectly stated that the defendant called no witnesses. *Id.* at 734.

¶ 28    We find *Morgan* inapposite. First, as the court in *Morgan* noted, "where a conviction for taking indecent liberties is based on the testimony of a child, the evidence must be corroborated or otherwise be clear and convincing in order to sustain a judgment of guilt." *Id* at 733. That standard, which no longer exists and was unique to sex offenses (*People v. Schott*, 145 Ill. 2d 188, 201-03 (1991)), is inapplicable here, where a single witness's testimony can sustain a conviction (see *Swenson*, 2020 IL 124688, ¶ 36).

¶ 29    Second, while there is no evidence that the woman was unconscious from a substance, defendant's suggestion that the woman could have disposed of the firearm out the window does not create a reasonable doubt of his guilt. Given that the woman was found unconscious on the floor of the vehicle and Ewing did not see her in the vehicle prior to the crash, a rational trier of fact could infer that she was unconscious at the time the firearm dropped from the window. See *Jackson*, 2020 IL 124112, ¶ 70 ("[T]he trier of fact is not required to disregard inferences that flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt.").

¶ 30    Defendant likens his case to *People v. Boswell*, 19 Ill. App. 3d 619 (1974), where this court reversed the defendant's conviction for cannabis possession when no evidence "rul[ed] out the possibility" that someone other than the defendant dropped the cannabis from the door of a vehicle. *Boswell*, 19 Ill. App. 3d at 621. In *People v. Pintos*, 133 Ill. 2d 286 (1989), however, our supreme court affirmed that the reasonable doubt standard, not a reasonable hypothesis of innocence standard, applies to cases based on circumstantial evidence. *Pintos*, 133 Ill. 2d at 291. Here, given

Ewing's testimony confirming that this type of firearm "ha[s] weight," the trial court was not unreasonable in inferring that the firearm would not fall straight down if Thompson threw it from the driver's seat, and, again, the trial court was not required to elevate alternate theories to the level of reasonable doubt. See *Jackson*, 2020 IL 124112, ¶ 70.

¶ 31    Accordingly, we conclude that a rational trier of fact could find that the State proved defendant guilty of UUWF beyond a reasonable doubt.

¶ 32    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 33    Affirmed.