(No. 30431.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PAUL PAZELL, Plaintiff in Error.

*Opinion filed March 18, 1948.*

John Zukowski, and E. C. F. Meier, both of Chicago, for plaintiff in error.

George F. Barrett, Attorney General, of Springfield, and William J. Tuohy, State's Attorney, of Chicago, (John T. Gallagher, and Melvin S. Rembe, both of Chicago, of counsel,) for the People.

Mr. Justice Wilson delivered the opinion of the court:

By an indictment returned in the criminal court of Cook County, the defendant, Paul Pazell, was charged with the crime of taking indecent liberties with a child. The lesser offense of contributing to the delinquency of a child was included in the second count of the indictment. A jury found defendant guilty of indecent liberties and he was sentenced to imprisonment in the penitentiary for a term of not less than one year nor more than two years.

At the time of the trial, defendant was fifty-eight years of age and had been employed by a large packing company in Chicago for thirty years. He owned a two-flat apartment building and resided on the first floor with his wife, Betty, and their two sons, Paul, aged nine, and George, aged six. A vegetable garden and a garage occupied part of the back yard, while the rest was devoted to two swings and a teeter-totter. Because of these attractions, many children in the neighborhood were accustomed to play

there. Among them was the complaining witness, Catherine Kelly, seven years of age, who lived with her parents and two sisters about ten doors down the street.

Catherine Kelly, her parents, a playmate, the examining physician and the arresting officer were called as witnesses for the People. Catherine testified that, about four o'clock on the afternoon of June 5, 1946, she began to play in the back yard of another little girl, Rosemary Balcauski; later, they both went into defendant's back yard to play on the swings; no other children were present in the yard; subsequently, defendant emerged from his house, told her playmate to go home and took her into the house; during the half hour she was alone with defendant, he committed certain acts, the details of which are not necessary to describe, and then sent her home shortly before six o'clock. According to the complaining witness, she had suffered similar conduct by defendant in his house on five occasions earlier the same year and he had thrice committed irregularities in her presence in his garage. Admitting that she knew defendant's conduct was wrong and that he did not swear her to secrecy or threaten her, Catherine did not mention these occurrences to anyone until she told her father on June 9, 1946.

Rosemary Balcauski, a student in third grade, corroborated Catherine's testimony only to the extent that she stated she played with Catherine in defendant's yard until he told her to go home and took Catherine into the house. On cross-examination, Rosemary testified that, in addition to herself and Catherine, another girl and defendant's two boys were all playing in the yard and Mrs. Pazell was at home.

Dr. Calista Kessler examined Catherine Kelly on June 10, 1946. Her testimony was inconclusive. Catherine's mother merely stated her daughter's age and said that she knew her children and many others played in defendant's yard. Martin Kelly, Catherine's father, related that, on

June 9, 1946, he accused defendant of "doing dirty things" to his daughters and that defendant denied having harmed or played with his girls. The arresting officer also stated that defendant denied the charge when he was taken into custody.

For the defense, Betty Pazell testified she had never heard a word of complaint from the Kellys prior to June 9, 1946, and that her husband used to chase Catherine and Patricia Kelly out of the yard because they stepped on growing vegetables, broke the swings and were otherwise destructive. She further testified she is employed daily until four o'clock and generally arrives home at five o'clock or a little earlier, while her husband, whose workday ends at four-thirty, usually arrives home between five and five-thirty. Paul and George Pazell testified that about ten children play in their back yard; that Catherine Kelly used to play there several times a week; that frequently their father had to send the other children home because they were damaging the garden or swings, and that they never saw their father take any little girl into the house or garage or do anything improper.

Jessie Foley, a widow eighty years of age and the occupant of the other apartment in defendant's building, testified that many children played in the back yard; that Catherine Kelly was a frequent visitor; that defendant often put her out of the yard; that Catherine wanted to enter her aparament but she refused, and that she had never seen defendant take indecent or immoral liberties with the girl.

Of three neighbors who attested to defendant's reputation in the community for good moral character, one was a married man without children, another was a married man with two small daughters, and the third, Rose Knies, had five children and seven grandchildren. Mrs. Knies lived two doors from defendant and her rear porch, where she was accustomed to sit in the afternoons, overlooked

defendant's yard. She further related that many children played on the swings and with the wagons and toys in the yard; that defendant had to chase the children out of the yard when they made too much noise; that she never knew defendant to take any little girl into his house or garage, and that she never saw him commit an immoral act with any of the children.

Appearing as a witness in his own behalf, Pazell testified that he had never been in trouble before and specifically denied all of Catherine Kelly's testimony pertinent to the charge of indecent liberties. He further denied that Catherine was in his house on June 5, 1946. On cross-examination, the assistant State's Attorney sought to determine whether defendant had ever had any little girls in his house and, more specifically, whether Catherine Kelly, Patricia Kelly, Darlene Dearth, or LaVerne Glombicki had ever been in his house. All objections to this mode of cross-examination were overruled. Defendant then testified that none of the little girls had ever been in his house except Catherine and that the only time she had ever entered his home was once the previous fall when, at her own request, he and his wife admitted her for a few minutes so that she might look at a book belonging to one of his boys, which she wanted to see.

On rebuttal, Patricia Kelly, Catherine's six-year-old sister, testified that she had been alone with defendant in his house five or six times. Darlene Dearth, aged nine, and LaVerne Glombicki, a third-grade student, both related that they had been in defendant's house.

Defendant is represented in this court by new counsel. The principal errors urged as grounds for reversal are (1) an underscored instruction; (2) prejudicial remarks by the assistant State's Attorney; (3) incompetency of defendant's counsel at the trial, and (4) insufficiency of the evidence. In the absence of timely objections to the instructions given and to the remarks of the assistant

State's Attorney in his closing argument to the jury, these matters are not open for review. As concerns the contention of incompetency of counsel, we must observe that the attorney who formerly represented defendant has had wide experience in the trial of criminal cases. Thus, the decisive issue presented for determination is whether the evidence is sufficient to sustain the judgment of conviction.

Where a conviction for taking indecent liberties with a child depends upon the testimony of the prosecuting witness, and the defendant denies the charge, there must be substantial corroboration of the prosecuting witness by some other evidence, fact or circumstance in the case. (*People* v. *Martin,* 380 Ill. 328.) We are not unmindful of the danger of resting a conviction upon the testimony of a child of tender years and the judgment will not be permitted to stand unless the testimony is corroborated or otherwise strong and convincing. (*People* v. *Crowe,* 390 Ill. 294.) To sustain a conviction on the uncorroborated testimony of the prosecutrix, her testimony must be most clear and convincing. *People* v. *Herzberger,* 372 Ill. 251.

In cases of this character, the account of an eyewitness, (*People* v. *Sharp,* 384 Ill. 503,) the testimony of a witness to other indecent liberties taken by the defendant with the complaining witness either prior to, (*People* v. *Mocko,* 388 Ill. 442,) or after the act charged, (*People* v. *Sims,* 393 Ill. 238,) undisputed evidence tending to incriminate, (*People* v. *Catranis,* 392 Ill. 580,) and admissions of the defendant (*People* v. *Crowe,* 390 Ill. 294,) constitute potential sources of corroboration or otherwise amount to clear and convincing evidence sufficient to sustain a conviction. The record in the case at bar, however, fails to disclose any substantial evidence tending to corroborate the story of the seven-year-old prosecuting witness. Rosemary Balcauski, also a child of tender years, corroborates Catherine Kelly's testimony only to the extent that she stated Catherine went into defendant's house on the after-

noon in question. Rosemary, however, contradicted Catherine in two important respects by testifying that there were several other children in the yard at the time and that Mrs. Pazell was at home. Also offered as corroborating evidence, the testimony of Dr. Kessler was of slight evidentiary value.

Concerning Catherine's complaint to her father, coming four days after the acts charged, it is obviously too late in point of time to constitute corroboration. In this same connection, it must be observed that although the prosecutrix testified as to eight separate prior offenses all within the space of a few months she made no disclosure to anyone until she told her father on June 9. Furthermore, despite the fact that defendant's back yard is a popular playground for children, Catherine testified that on no prior occasion was anyone else present when she entered or left defendant's home or garage.

Lacking corroboration, the testimony of the prosecuting witness becomes even less convincing when viewed in the light of the evidence adduced in behalf of defendant. A married man with two small children, defendant owns his own home and has been employed by the same company for thirty years. The testimony of three witnesses as to his good reputation for moral character stands unchallenged by the People. Two close neighbors, who frequently saw children at play in defendant's yard, testified they never observed him take indecent liberties with any child. That several witnesses related defendant had frequently been forced to chase Catherine Kelly out of the yard because she broke the swings and trampled on the plants in the vegetable garden suggests that her accusations may have originated in ulterior motives. Moreover, defendant denied the charge when accused by Catherine's father on June 9, persisted in his denial when arrested later the same evening, and continued to assert his innocence at the trial.

Lastly, the cross-examination of defendant, over the objection of counsel, as to whether he had ever had any little girls in his house, including Patricia Kelly, Darlene Dearth and LaVerne Glombicki, followed as it was by the testimony of the named girls on rebuttal, cannot pass without criticism. We have frequently held that, in a prosecution for taking indecent liberties with a child, it is improper and prejudicial to introduce evidence showing the defendant had been guilty of similar practices upon other girls. (*People* v. *Herzberger*, 372 Ill. 251; *People* v. *Bernsee*, 367 Ill. 518; *People* v. *Langaas*, 339 Ill. 267; *People* v. *Rogers*, 324 Ill. 224.) Evidence of such other acts is not competent to prove intent in the actual offense charged and can only create prejudice in the minds of the jury against the defendant. While it is true that the assistant State's Attorney did not specifically examine Pazell as to whether he had taken immoral and indecent liberties with the little girls and did not so interrogate the girls themselves on direct examination, a strong, prejudicial innuendo was created nonetheless. The innuendo that defendant was guilty of taking indecent liberties with children other than the complainant could not be eradicated from the minds of the jurors. As this court observed in *People* v. *Deal*, 357 Ill. 634, "Human nature does not change merely because it is found in the jury box. The human mind is not a slate, from which can be wiped out, at the will and instruction of another, ideas and thoughts written thereon." The objection is all the more strong where, as here, the incompetent testimony was admitted and the jurors were not instructed to disregard such evidence.

The judgment of the criminal court of Cook County is reversed and the cause remanded to that court for a new trial.

*Reversed and remanded.*