(No. 36543.— ■■■■■■■■

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN KOLDEN, Plaintiff in Error.

*Opinion filed September 28, 1962.*

C. R. PETERSON, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant John Kolden was indicted for rape and for taking indecent liberties with his 9-year-old stepdaughter, tried before the court, found guilty of taking indecent liberties, and sentenced to one to twenty years in the penitentiary. He brings the case before us on writ of error, contending that he was not proved guilty beyond a reasonable doubt, that the court erred in the admission of evidence, and that the court based its decision on facts not in the record.

Prior to trial the court ordered a psychiatric examination of the defendant pursuant to statute. (Ill. Rev. Stat. 1959, chap. 38, pars. 825f, 825g.) The resultant report indicated that defendant was not a sexually dangerous person and was not committable to a mental institution.

Defendant's 9-year-old stepdaughter testified that on September 7, 1960, the defendant called her into the bathroom and told her to touch his "private," but her brother knocked at the outside door and the defendant answered it. At 12:30 that afternoon defendant and the witness were in the bedroom, and she testified that defendant "put his finger in my private." The defendant was only wearing underwear shorts. Over objection the witness testified as to past seduction attempts and other indecent acts by defendant.

On cross-examination the witness testified that she did not know what "privates" are, and the following interrogation took place:

"Q. Now, when you said that he put his finger in your privates, you don't know where he put his finger then, isn't that right?

A. Yes.

Q. You don't know what privates are, do you?

A. No.

Q. And so, when you say he put his finger in your privates you don't know what you mean by saying that, do you?

A. No.

Q. And you are just telling us what this gentleman over here told you to say, isn't that right?

A. Yes."

After this examination, the witness went into the corridor and talked with her mother; the mother told her what the word "private" meant, and the witness was recalled for the redirect examination, at which time she explained the meaning of the word. She testified that the

first time she mentioned the incident was the following day.

Defendant introduced in evidence a statement dated September 8, 1960, signed by the witness, and containing the following question and answer.

"Q. Did your daddy put his finger inside of you?

"A. No, not yesterday."

Defendant's wife testified that she had a conversation with her daughter, defendant's stepdaughter, on September 7 at 3:45 P.M. The next day they went to see Dr. Colletti at 5:45 in the evening. They thereafter went to the North Avenue police station about 7:00 P.M.

Dr. Colletti testified that she examined the stepdaughter during the afternoon of September 8 and that there was no bleeding from the vagina and the hymen appeared to be intact. Over the objection of defendant, the doctor testified that it would have been possible for an object the size of a man's finger to enter the vagina without perforating the hymen or rupturing it.

The defendant testified and denied all allegations of misconduct with his stepdaughter. He testified that all of the children were home from school when he arrived home about noon on the 7th. On rebuttal one of his stepsons, aged 12, however, testified that the father was home dressed in his shorts and opened the door for him when he returned from school.

It is well settled in Illinois that where a conviction for taking indecent liberties with a child depends on the testimony of the prosecuting witness, and the defendant denies the charge, there must be substantial corroboration of her testimony, or the testimony must be otherwise clear and convincing. *People* v. *Parker*, 15 Ill.2d 508; *People* v. *Pazell*, 399 Ill. 462; *People* v. *Martin*, 380 Ill. 328.

In the present case the testimony of the prosecuting witness was badly shaken by her admission on cross-examination that she did not know what "privates" were, and did not know where defendant had placed his hand. Her clarifi-

cation of the testimony came only after she had admittedly been coached by her mother during a recess. (See *People* v. *Martin,* 380 Ill. 328.) Her testimony is further contradicted by her signed statement given to the police the day following the alleged incident, that defendant had not put his finger inside of her the previous day. She also testified that defendant often spanked her, that he had spanked her on September 7, 1960, and that she got angry with defendant when he spanked her.

We think it clear that in the absence of substantial corroboration, the testimony of this 9-year-old prosecutrix is not so clear and convincing as to sustain a conviction. The State does not deny the need for corrobation, nor have they cited a single decision upholding a conviction for taking indecent liberties on evidence similar to that adduced in the case at bar. The State claims that the testimony of the prosecutrix was corroborated by her brother, who placed defendant in the house alone with the prosecutrix, dressed in his undershorts. We do not consider this to be substantial corroboration of the type suggested in *People* v. *Pazell,* 399 Ill. 462, 467, or found to exist in *People* v. *Halteman,* 10 Ill.2d 74.

It is to be noted that the prosecutrix's brother found nothing unusual when he returned home, and that the examining physician failed to corroborate the testimony of the prosecutrix. The testimony of the mother was also devoid of substantial corroboration.

While we are cognizant of the difficulties in adducing proof in cases of this type, 'and the susceptibility of small children to confusion upon cross-examination, the very odium and prejudice arising from such a charge requires that the courts do not vitiate the traditional requirement of proof of guilt beyond a reasonable doubt. From the record before us we are convinced that the State has failed to sustain this burden.

Because of our view of the case, we find it unnecessary

to determine if the court erred in the admission of evidence. The judgment of the trial court is therefore reversed.

*Judgment reversed.*