People of the State of Illinois, Defendant in Error, v. Leroy Dorsey, Plaintiff in Error.

Gen. No. 50,140.

First District, Third Division.

April 1, 1965.

Robert J. Garrett, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach, Assistant Attorney General, Elmer C. Kissane and Thomas A. Hett, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Defendant was convicted, on a bench trial, of taking indecent liberties with his fourteen-year-old daughter Yolanda and was sentenced to a term of not less than one nor more than eight years in the penitentiary. Defendant argues three points on appeal: (1) the error of the court in refusing to permit counsel for defendant to examine for impeachment purposes two statements made by Yolanda which were in the possession of the prosecution; (2) that the failure of Yolanda to seasonably inform any person of the alleged illicit act in itself creates a reasonable doubt that such an event ever took place; and (3) that the contradiction of each item of Yolanda's testimony relating to events during and immediately subsequent to the alleged offense also creates a reasonable doubt that it occurred.

On March 15, 1963, defendant resided with his wife Delores, his daughters Yolanda and Adrienne, both aged fourteen, and his four sons, ranging in age from seven to thirteen years, at 3357 West Ogden Avenue, Chicago, Illinois, in a six room apartment having three bedrooms. Defendant and his wife normally occupied the front bedroom, the four boys slept together in the back bedroom, and Yolanda and Adrienne occupied the middle bedroom.

Defendant and his friend Marvin Thomas had spent the day working together. Afterward they went to Bilko's Liquors, a block or so away from the Dorsey apartment, to purchase six quarts of beer, and arrived at the Dorsey apartment at about 7:30 p. m. Defendant testified that he took his dinner alone and went and "laid" down in his bedroom, wearing his work pants and shirt, at approximately 9:00 p. m. Two additional friends arrived at the apartment, Leo and Pauline. Marvin, Leo, Pauline and Mrs. Dorsey left the apartment at about 10 p. m. to go to a wake or funeral. The defendant did not accompany them.

Yolanda testified that after they left, she and Adrienne and the four boys watched television in the front room, that her father got out of bed, dressed in a tee shirt and undershorts, and told her brothers to go to bed, which they did, that he then told Adrienne to go to Bilko's, and that after she left, he got out of bed and locked the door of the apartment, and told Yolanda to come into the bedroom, which she did. He then told her to take off her underpants and bend over the bed. She protested and began to cry. Defendant then threatened her and finally by force made her bend over the bed. Defendant lifted her dress and began rubbing his "peter" against her "privates." Afterward her legs were covered with "whitish stuff," and her father told her to wash herself off.

Yolanda further testified on direct examination that she was in the washroom when her sister came back from the store and that the defendant sent Adrienne out again. On cross-examination Yolanda testified that she was in the bedroom when Adrienne came in, that she did not see her come in, but heard her when her father asked "Who is it?" and she answered "Adrienne," and that her father was not in the bedroom at the time. Yolanda testified that she was in the bathroom when Adrienne came back from the store the second time.

Adrienne substantiated Yolanda's testimony to the extent that the defendant was wearing a tee shirt and undershorts, that after Mrs. Dorsey left, he came out of his room, sent the boys to bed, and sent Adrienne to the store. However, Adrienne testified that she went to the store three times at the defendant's request. The first time she returned, Yolanda was sitting on the couch in the living room, the second time she had just "came" out of the defendant's bedroom, and the third time, she was in the washroom. On cross-

examination Adrienne testified that after the first and second time she returned from the store, she talked to her father in his bedroom and that he sent her back to the store.

Both girls went to bed about midnight. Yolanda said that she never told her mother about the incident. There is no other evidence in the record that she made a complaint, but nine days later she and her mother went to the police station and the defendant was arrested.

Defendant testified that he had asked the "kids" to awaken him at midnight so he could watch the wrestling matches, that he did not see his wife subsequently and was not aware of the presence or absence of Marvin Thomas after 9:00 p. m. He testified that he fell asleep shortly after 9:00 p. m. and awoke at about 2:30 a. m.; that still clad in his work pants and shirt he rose and went to the washroom, discovered the absence of his wife, and awakened Yolanda and asked her for information. Yolanda replied that Mrs. Dorsey had gone to a wake with Marvin, Pauline and Leo. Defendant thereupon went back to bed. He denies having taken indecent liberties with his daughter, saying he had been asleep from shortly after 9:00 p. m. until approximately 2:30 a. m.

■ Defendant contends that Yolanda Dorsey gave two statements, only one of which was produced by the prosecution; that defendant made a demand for the additional statement, which might have been of critical importance in the cross-examination and impeachment of Yolanda, and that the prosecution did not produce the statement. The prosecution on the other hand contends there was only one statement. The law is well settled. The defendant is entitled to the production of a prior statement for the purpose of impeaching the testimony of the witness who made the

statement. People v. Moses, 11 Ill2d 84, 142 NE2d 1; People v. Wolff, 19 Ill2d 318, 167 NE2d 197; People v. Harrison, 25 Ill2d 407, 185 NE2d 244. The state denied that there were any other statements in its possession.

On cross-examination, Yolanda testified that she signed a statement during her visit to the police station. She further testified that following her visit to the station she was taken to the Criminal Court Building, where she talked with an assistant state's attorney and signed a second statement. Defense counsel then asked for the two statements from the State's Attorney, who told the judge he was tendering a statement of the investigating officer, but that he had no statement of Yolanda's taken by the State's Attorney. Defense counsel then proceeded further to Cross-examine Yolanda as follows:

"Q. But you did sign another statement down there, is that right?

A. Another paper like that?

Q. Yes.

A. I think he gave me some papers and asked me to sign, me and my mother.

Q. Who is he?

A. That man sitting behind there. (Indicating.)

Mr. Moran: What is your name, sir?

A Voice: Detective James Hoffheimer.

Mr. Moran. Q. Is he the only one that gave you any papers to sign?

A. Yes, sir, I think so.

393

Q. Well, do you remember whether or not you signed any downstairs in the State's Attorney's Office?

A. No, I don't remember.

Q. You do not remember?

A. No, sir."

Defense counsel after eliciting the foregoing answers asked for a moment to look at the statement tendered. He did not reassert his request for the other statement and did not continue that line of questioning. He appears to have been satisfied that there was but one statement, and we are likewise satisfied.

■ It has often been said that a charge of indecent liberties is an accusation easily made, hard to prove, and harder to defend against. People v. Nunes, 30 Ill2d 143, 195 NE2d 706. Where such a conviction depends on the testimony of a child, there must be substantial corroboration or the testimony must be otherwise clear and convincing. People v. Kolden, 25 Ill2d 327, 185 NE2d 170; People v. Parker, 15 Ill2d 508, 155 NE2d 588; People v. Pazell, 399 Ill 462, 78 NE2d 212; People v. Martin, 380 Ill 328, 44 NE2d 49. The state contends that *Yolanda's* testimony was substantially corroborated in key details by the testimony of her sister Adrienne and the defendant, and that Yolanda testified in such a clear, convincing and straightforward manner as to warrant belief beyond a reasonable doubt even if her testimony stood alone.

Yolanda testified that upon Adrienne's departure for Bilko's, the defendant arose and locked the door. Adrienne testified she had no difficulty in reentering the apartment. Yolanda testified that Adrienne went to Bilko's twice, while Adrienne testified she went there three times. Yolanda testified on direct exami-

nation that she was in the washroom when Adrienne came back the first time. Adrienne testified that Yolanda was sitting on the couch in the living room. On cross-examination Yolanda testified that the defendant spoke with Adrienne outside of his bedroom, beyond the hearing of Yolanda, who was then in the bedroom. Adrienne testified that she spoke to the defendant in his bedroom both times following her return from the store. As to Yolanda's whereabouts upon Adrienne's second return to the apartment, Yolanda said she was in the washroom, while Adrienne said she was in the living room, having just walked in from the defendant's bedroom. The state argues that "knowing the effects of television upon adults as well as children—an almost hypnotic quality—it is a most reasonable assumption that Adrienne in fact went to the store three times but that Yolanda was so absorbed in the television program that she failed to notice her sister's absence at this time."

■ A reviewing court cannot appraise the candor and truthfulness of a witness except as it appears from the cold record. In that qualified sense, Yolanda's testimony appears to us to be truthful and candid, even though there are the discrepancies of a minor character as above stated between her testimony and that of her sister.

Defendant also argues that there was no outcry by Yolanda at the time of the alleged act, no testimony that the bedroom door was locked or that the door of the boys' bedroom was closed and no evidence of complaint on the part of Yolanda either to her sister that evening or to her mother the following day. The matter was reported to police officers nine days later. As to the alleged indecent act, Yolanda's testimony was clear and unshaken on cross-examination. The lack of an outcry and the late complaint might well be attributed to the child's fear of her father.

395

Shame, family pride and other imponderables could well explain the silence.

The trial was fairly conducted and the judgment is affirmed.

Judgment affirmed.

DEMPSEY P. J. and SULLIVAN, J., concur.