(No. 49305.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. DONALD L. MORGAN, Appellee.

*Opinion filed November 30, 1977.*

William J. Scott, Attorney General, of Springfield, and Lloyd Middleton, State's Attorney, of Pinckneyville (James B. Zagel, of Chicago, and Jayne Carr, of Springfield, Assistant Attorneys General, and Bruce D. Irish and Keith Vandem Dooren, of the Illinois State's Attorneys Association Prosecutors' Appellate Service, of counsel), for the People.

Michael J. Rosborough, Deputy Defender, of the Office of the State Appellate Defender, of Mount Vernon, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

Following a bench trial in the circuit court of Perry County, defendant, Donald Morgan, was convicted of taking indecent liberties with a child and was sentenced to the penitentiary for a term of four to eight years. The appellate court, in a split decision, reversed the conviction on the grounds that the evidence was insufficient to prove defendant guilty beyond a reasonable doubt. (44 Ill. App. 3d 730.) We granted the State leave to appeal.

At trial, testimony in behalf of the State indicated that on the evening of March 14, 1974, in the living room of complainant's trailer home, the defendant performed a certain indecent act upon the complainant, a seven-year-old girl. The girl's mother, Mrs. Vaughn, testified that on that evening defendant arrived at their trailer home shortly after supper, and that he drank a "beer or two" with her and her husband. The complainant played and watched TV while her parents and the defendant conversed. At approximately 8 p.m., the defendant fell asleep on the sofa. About 9 p.m., complainant was sent to bed. At

10:30, Mrs. Vaughn attempted to wake the defendant; she and her husband called and shook the defendant but were unable to arouse him, so they left him sleeping on the sofa and went to bed. The following morning, when Mrs. Vaughn arose, the defendant had gone. She awakened her daughter, fixed her breakfast, and sent her to school. The child made no complaint to her mother that morning. Later that morning, the defendant returned to the Vaughn's trailer. Mr. Vaughn, the complainant's step-father, gave essentially the same testimony as his wife with regard to the events of the evening in question.

After the court and defense counsel examined the complainant to determine her competency to testify, the complainant stated that defendant, who she had met only a few weeks earlier, was at her home on March 14, drinking beer with her mother and stepfather, and that he was still there when she went to bed that night. Sometime during the night, after her parents had gone to bed, the defendant entered complainant's bedroom and awakened her. She testified that defendant told her to get up and asked her if she wanted to go for a ride. She declined. Defendant then took her into the living room where he had her lay on the floor while he sat along side her, drinking a beer. The complainant testified that the defendant then pulled down her underpants and kissed her once on the "crotch." On cross-examination, the defense counsel introduced a portion of the complainant's pre-liminary hearing testimony wherein she stated she was not wearing any underpants on the night in question. Complainant further testified that she related this incident only to her grandmother.

Mrs. Ginther, the complainant's grandmother, testified she took the complainant to her home on Saturday, March 16, to spend the weekend. That Saturday night, while Mrs. Ginther was giving her granddaughter a bath, the minor complained about a burning and itching sensation in the

area of her vagina, and the grandmother noticed it was red and irritated. On Monday, March 18, the complainant was taken to a physician for an examination. The doctor did not testify at trial, although he had testified at the preliminary hearing.

A police officer, Michael Bragg, called by defendant, testified that he was summoned to the Vaughn's trailer home on March 23 and was told of the incident. Mr. Vaughn accompanied the officer to the police station, where he signed a formal complaint. The complaint indicated the incident occurred on March 21, rather than on March 14. The record indicates that this apparent discrepancy was the result of the officer's misunderstanding when he filled out the complaint.

Mrs. Ruth Hawkins, complainant's second-grade teacher, testified on behalf of defendant that sometime in March, complainant told her that an Allan Miller had attempted to perform some sexual act with her but that she screamed for her mother and the police arrived with their lights flashing. The teacher immediately informed her principal of the complainant's story but did not contact the police inasmuch as, according to the child, the police had already been contacted. Mrs. Hawkins further related that on earlier occasions the complainant had stated that her "real father was ground up like hamburger" (however, during the competency examination noted above, the complainant testified that her real father was alive and living in Detroit), and that she had said she was going to find her mother, who was missing. The witness also related that on another occasion the complainant had told her that her mother and grandmother had once argued about the complainant's lack of cleanliness. The grandmother allegedly took complainant home, washed her and provided her with clean clothes. On cross-examination, the witness stated that complainant made good grades, and that, although complainant at times had told "pretty wild

things," the witness did not think the child had ever intended to lie to her.

On rebuttal, complainant denied having told her teacher that her father had been ground up like hamburger or that Allan Miller had committed indecent acts. She also stated that she rarely told her teacher about things that happened at home, but she admitted telling her teacher that her mother was not at home one night.

Defendant denied being present at the Vaughn trailer on March 14, and specifically denied the complaint's allegations. On cross-examination, defendant stated that he had started drinking gin at about 2 p.m. on March 14, and had attended a friend's party that night. No alibi witnesses were called.

The court took the case under advisement, and, five weeks later, rendered its decision. In finding the defendant guilty, the court stated that the complainant's testimony was "quite definite, certain *** [and] not shaken on cross-examination." The court further found incredible defendant's testimony that he was not present in the trailer home on March 14, and found that the grand-mother's testimony constituted some corroboration. The court specifically stated that it "believed the testimony of the little girl and particularly the mother of this little girl in this situation."

In reversing the defendant's conviction, the appellate court relied, in part, on the physician's preliminary hearing testimony which was not introduced at trial. The State argues that the appellate court erred in considering the doctor's preliminary hearing testimony. It further contends that the appellate court erred in finding the evidence insufficient to prove defendant guilty beyond a reasonable doubt. The State argues that the complainant's testimony was clear and convincing as well as corroborated, and that the question of the witness' credibility was one for the trial court. Finally, the State argues for the first time on

appeal that the trial court erred in excluding certain incriminating statements made by the defendant at a polygraph examination while in custody.

We agree that the appellate court erred in considering the physician's preliminary hearing testimony which was not introduced into evidence at trial. Testimony taken at a preliminary hearing is not a part of the record on review unless it was properly introduced at trial. Testimony elicited at a preliminary hearing is admissible at trial in only certain limited situations, *e.g.*, for purposes of impeachment *(People v. Moretti* (1928), 330 Ill. 422, 424), or in cases where a witness is not available to testify and there had been ample opportunity to cross-examine *(People v. Horton* (1976), 65 Ill. 2d 413, 415-17; *People v. Tennant* (1976), 65 Ill. 2d 401, 408-11). Here, no attempt was made by either party to introduce the physician's testimony at trial, and it was error for the appellate court to use such testimony in an attempt to arrive at its decision.

Despite the appellate court's error, we find that, based on the evidence in the record, the court properly reversed the defendant's conviction. Contrary to the State's contention, the complainant's testimony was neither clear and convincing nor substantially corroborated, as required in cases of this nature. *People v. Kolden* (1962), 25 Ill. 2d 327, 329.

The complainant's credibility and veracity were seriously brought into question by her teacher's testimony. The account of the incident related by the complainant to her teacher and that testified to at trial were completely at odds. Other conversations had with the teacher indicate the complainant had the propensity to fabricate stories in the past. It also seems inconsistent, based on the evidence in this record, that the complainant would feel free to volunteer information to her teacher regarding the alleged incident but not to relate it to her mother. While due

weight must be given to the trier of fact as to the credibility of the witnesses, "it is our duty to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and create an abiding conviction that he is guilty of the crime charged." *People v. Nunes* (1964), 30 Ill. 2d 143, 146.

The only corroborative evidence supporting the complainant's testimony was that of her parents and the grandmother, neither of which constituted substantial corroboration. The parents' testimony merely placed the defendant in their trailer home on March 14. Although this testimony constituted some corroboration, in *People v. Kolden* (1962), 25 Ill. 2d 327, a case similar to the case *sub judice* in that the complainant there also had made prior inconsistent statements, this court held that merely placing the defendant in the house with the complainant was not, alone, sufficient corroboration to sustain a conviction where the complainant's testimony was otherwise unconvincing.

The grandmother's testimony was also insufficient to constitute substantial corroboration. The complainant testified that the defendant had kissed her only once. There is no evidence that the defendant performed any other act. As noted above, there was no medical testimony to indicate whether the nature of the alleged act could have caused a persistent irritation and redness as that testified to by the grandmother. Recognizing the non-probativeness of the grandmother's testimony, the State suggests that the complainant could have caused the irritation herself out of guilt and shame by attempting to "rub off" the defendant's alleged contact. This is pure speculation unsupported by the record. Considering the teacher's testimony concerning the complainant's past hygiene, one could as well speculate that the irritation and redness were caused by poor hygiene.

While we are cognizant of the difficulties in adducing

proof in cases of this type, this does not vitiate the traditional requirement of proof of guilt beyond a reasonable doubt. (*People v. Kolden* (1962), 25 Ill. 2d 327, 330.) Where the complainant's testimony is substantially impeached by prior inconsistent statements and a history of fabrication, we will not sustain a conviction based on other testimony which is at best speculative.

The State argues for the first time on appeal that the trial court erroneously excluded certain incriminating statements made by the defendant at a polygraph examination. The trial court ruled the statements were involuntary and therefore inadmissible. The State contends the statements were made after the defendant had been read *Miranda* warnings and indicated that he understood them. The defendant, on the other hand, argues that the State should be precluded from raising this issue inasmuch as it did not raise the issue in its brief before the appellate court. We need not reach the defendant's argument, for the record before us does not support the State's contention.

The only evidence regarding the circumstances under which the statements were made was that of the polygraph examiner. The examiner testified that *Miranda* warnings had been read to the defendant. He did not indicate the nature of the admonitions. The State had the burden of proving that the defendant knew his rights, but waived them. (*People v. Roy* (1971), 49 Ill. 2d 113, 116.) Absent such a showing, we find that the statements were properly excluded.

Accordingly, the appellate court's judgment is affirmed.

*Judgment affirmed.*